UNITED STATES of America, for and on Behalf of PORTLAND CONSTRUCTION COMPANY, Plaintiff-Appellant,

v.

WEISS POLLUTION CONTROL CORPORATION et al., Defendants-Appellees.

No. 74–4085.

United States Court of Appeals, Fifth Circuit.

June 4, 1976.

Michael H. Feiler, Alan Ackerman, Detroit, Mich., Sumner & Tyner, Dade City, Fla., for plaintiff-appellant.

Robert Goldhagen, C. R. Talley, Tampa, Fla., Thomas A. Rayer, New Orleans, La., for defendants-appellees.

Before GEWIN and AINSWORTH, Circuit Judges, and MARKEY,* Chief Judge.

GEWIN, Circuit Judge:

This is an appeal from an order dismissing an action brought pursuant to the Miller Act, 40 U.S.C. § 270a *et seq.*

On November 9, 1972 appellee Weiss Pollution Control Corporation (Weiss) entered into a construction contract with the United States, acting by and through the Army Corps of Engineers, for certain canal and bridge construction work on the project commonly known as the Tampa Bypass Canal. At the same time appellee Argonaut Insurance Company (Argonaut), as surety, executed and delivered to the United States a Miller Act payment bond, with Weiss as principal, for the protection of all persons supplying labor and material in the prosecution of the work provided for in the construction contract.

By contract dated December 8, 1972, Weiss subcontracted specific portions of the excavation and associated work under its prime contract to appellant Portland Construction Company (Portland). Paragraph 9 of this subcontract provides as follows:

> It is further agreed that any controversy or claim arising out of, or related to any provision of this subcontract, or breach thereof, shall be settled by arbitration in accordance with the rules then in effect of the American Arbitration Association to the extent consistent with the laws of the State of Michigan and the award of the arbitrators shall be final and binding upon the parties.

Portland commenced work under the contract, but a dispute between the parties arose, and Portland stopped work on or about October 29, 1973. On May 21, 1974 Portland issued a demand for arbitration in accordance with the subcontract.

On August 28, 1974 Portland instituted this suit on the Miller Act bond in the

---

\* Of the U. S. Court of Customs and Patent Appeals, sitting by designation.

United States District Court for the Middle District of Florida.[1] On September 23 Weiss and Argonaut each filed motions to dismiss or in the alternative to stay the Miller Act suit. They argued that Portland, having chosen the alternative remedy of arbitration in Michigan, was thereafter precluded from maintaining a federal suit with identical issues.[2] In its response to these motions, Portland consented to an order staying the federal proceedings, but opposed dismissal of the suit. The district court, adopting the reasoning put forth by the appellees, granted their motions to dismiss and entered the following order:

> The crux of defendants' argument is that plaintiff, having instituted binding arbitration proceedings, should not be permitted to maintain the instant action claiming identical relief. The Court agrees. Although the plaintiff may have had a choice of forums in which to bring his claims, his choice of arbitration precludes his later suit in this Court. *See United States for the Use of Trucco & Sons Company v. Bregman Construction Corp.,* 256 F.2d 851 (7th Cir. 1958). This dispute should be settled through the pending arbitration process. A stay of this action would be completely unproductive. Accordingly the defendants' motions to dismiss should be, and they are hereby GRANTED, and this action is hereby DISMISSED.

On February 9, 1976 the very day that this appeal was argued before this court, the arbitration panel in Michigan rendered an award in favor of Portland and against Weiss in the amount of $209,440. Weiss has since filed a motion to vacate the arbitration award in the Circuit Court for Oakland County, Michigan. We remand this case with instructions pending the final outcome of those proceedings.

In dismissing the suit the district court treated Portland's demand for arbitration in accordance with the terms of its subcontract as a contractually agreed upon waiver of its Miller Act remedy or an election not to pursue that remedy. Neither of these approaches warranted dismissal. *In United States for the use of Ray Gaines, Inc. v. Essential Construction Co.,* 261 F.Supp. 715 (D.Md.1966), the court denied the general contractor's and surety's motions to dismiss the Miller Act suit based on a subcontract provision stating that all disputes were to be settled exclusively in state court. This provision, the court held, did not constitute a waiver of the subcontractor's right to sue on the Miller Act bond in federal court:

> No case has been called to the Court's attention holding that a federal court will enforce a clause in a contract expressly denying a subcontractor rights conferred by Congress when it enacted the Miller Act. There are several cases which hold that an agreement between a contractor and subcontractor to arbitrate a dispute will be upheld even though Miller Act jurisdiction exists and that a suit brought in federal court under the Act may be stayed pending such arbitration. [citations omitted] These cases go no further than to say that the Miller Act does not prohibit arbitration *before* resort to the courts if the subcontractor and contractor had previously agreed to arbitrate disputes.

261 F.Supp. at 721 (footnote omitted).

Similarly, in *United States for the use of N. Gigliello v. Sovereign Construction Co.,* 311 F.Supp. 371 (D.Mass.1970), the court concluded that a contractual provision giving the general contractor the right to have disputes settled in state court could not be interpreted as a bar to the subcontractor's right to bring his Miller Act suit:

> Parties cannot by contract oust the District Court of the jurisdiction conferred upon it . . . If [the contract] is to be interpreted as barring the plaintiff

---

1. 40 U.S.C. § 270b(b) provides that suits on Miller Act bonds must be brought in the district in which the contract was to be performed.

2. At the time this suit was filed, a Michigan state court, upon motion by Weiss, had enjoined the arbitration, and no arbitration proceedings were under way. The injunction was subsequently lifted, and fourteen arbitration sessions were held.

from his right to bring this action in this court, . . . then it is in direct contradiction to the provisions of the Miller Act and is therefore void.

311 F.Supp. at 373.

■ By demanding arbitration in Michigan, Portland did not waive its right to pursue its Miller Act remedy. Argonaut, the surety, was not a party to the subcontract that provided for arbitration and could not be joined as a party in the arbitration proceedings. Portland may avail itself of its Miller Act remedy against Argonaut only by way of a Miller Act suit in federal court. *United States Fidelity & Guar. Co. v. Hendry Corp.,* 391 F.2d 13 (5th Cir. 1968), *cert. denied,* 393 U.S. 978, 89 S.Ct. 446, 21 L.Ed.2d 439 (1968). Consequently, to find a waiver in these circumstances would totally deprive Portland of the cause of action conferred by the terms of the Miller Act.

■ By the same token, Portland's Miller Act suit was not barred by the doctrine of election of remedies. This doctrine means that if one party has alternative, *inconsistent* remedies, his choice of one remedy precludes further pursuit of the second remedy. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 50, 94 S.Ct. 1011, 1020, 39 L.Ed.2d 147, 159 (1974). *See generally* 5A Corbin, Contracts §§ 1214–1227 (1964 and Supp.1971). The purpose of the doctrine is to prevent double recovery for a single wrong. *Twin City Federal Savings and Loan Ass'n v. Transamerica Ins. Co.,* 491 F.2d 1122, 1125 (8th Cir. 1974).

The United States Arbitration Act provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties *stay* the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing that the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis supplied). The provisions of this Act apply to suits brought pursuant to the Miller Act. *United States for the use of Capolino Sons, Inc. v. Electronic & Missile Facilities, Inc.,* 364 F.2d 705 (2d Cir. 1966); *Agostini Bros. Bldg. Corp. v. United States for the use of Virginia-Carolina Electrical Works, Inc.,* 142 F.2d 854 (4th Cir. 1944). The Arbitration Act and these cases necessarily recognize that there is no inconsistency between arbitration and a subsequent suit on the Miller Act bond. If the two were inconsistent, a dismissal—not a stay—would be in order.

■ Portland is not seeking to litigate the same claims in two different forums. Portland consented to a stay of the Miller Act suit. Furthermore, Portland is contractually bound by the decision of the arbitrators and at oral argument admitted that no Miller Act remedy would be available if the arbitrators resolved the dispute in favor of Weiss.[3] Nor is Portland attempting to recover twice for the same wrong. What Portland *is* seeking to do is to guard against the possibility that Weiss may become insolvent and unable to pay an arbitration award in Portland's favor. Should that eventually transpire, unless Portland can maintain its Miller Act suit against the surety, it would be unable to recover.

■ Portland should not be required to await the outcome of the arbitration proceedings before instituting its suit under the Miller Act. A Miller Act suit must be filed within one year after the date on

---

**3.** Even if Portland had not contractually agreed to be bound by the arbitrators' decision, the doctrine of res judicata would have barred Portland from relitigating the issues resolved against it by the arbitrators. *International Auto Sales & Service, Inc. v. General Truck Drivers, Chauffeurs, Warehousemen and Helpers, Local Union No. 270,* 311 F.Supp. 313 (E.D. La.1970); *Livingston v. Shreveport-Texas League Baseball Corp.,* 128 F.Supp. 191 (W.D. La.1955), *affirmed,* 228 F.2d 623 (5th Cir. 1956).

which materials or labor were last supplied pursuant to the contract.[4] A demand for arbitration does not toll the statute of limitations. *United States for the use of Wrecking Corp. of America v. Edward R. Marden Corp.,* 406 F.2d 525 (1st Cir. 1969). Consequently, if Portland must wait until arbitration is completed before commencing its Miller Act suit and if—as was the case here—arbitration proceeds for more than one year, Portland's Miller Act claim would be barred by the statute of limitations.

Finally, *Trucco,* the only case cited in the district court's order of dismissal, does not require dismissal. In *Trucco* the subcontractor filed an action under the Miller Act against the general contractor and its surety. The defendant sought a stay of the suit pending arbitration between the parties as required by the subcontract. Holding that the defendant contractor had waived its contractual right to arbitration by filing an earlier suit in state court, the court denied the motion to stay. The issue in *Trucco* was thus waiver of *contract* rights, not waiver of statutorily conferred Miller Act rights; and the opinion simply cannot be interpreted to support the conclusion reached by the district court in the case now before us.

The purpose of the Miller Act is to protect those whose labor and materials go into public construction projects and to insure that they will be paid. *Graybar Electric Co. v. John A. Volpe Construction Co.,* 387 F.2d 55 (5th Cir. 1967); *Warrior Constructors, Inc. v. Haders, Inc.,* 387 F.2d 727 (5th Cir. 1967). The purpose of the Federal Arbitration Act is to facilitate and expedite arbitration to accord with the parties' intentions and to ease court congestion. *Galt v. Libbey-Owens-Ford Glass Co.,* 376 F.2d 711 (7th Cir. 1967). The result reached by the district court in this case is at odds with both these purposes. It would discourage parties from agreeing to arbitrate lest they lose their Miller Act remedies.

In sum, we have been cited to no authority which stands for the proposition that a subcontractor who arbitrates in accordance with the terms of his subcontract thereby relinquishes his right to bring a subsequent Miller Act suit. Neither the doctrine of election of remedies nor the *Trucco* case cited by the district court calls for this result. Moreover, the Federal Arbitration Act specifically provides for a stay rather than a dismissal. A dismissal of the Miller Act suit in these circumstances would not only be inimical to the underlying purpose of the Miller Act, it would hinder parties from arbitrating their disputes. Accordingly this cause is remanded to the district court with instructions to reinstate the suit pending the final outcome of the arbitration proceedings.

REVERSED and REMANDED WITH DIRECTIONS.